UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| WESLEY GORTMAKER,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　　　　Defendant. | 5:20-CV-05067-VLD<br><br>ORDER GRANTING DEFENDANT'S MOTION TO STRIKE ERRATA SHEET<br><br>[DOCKET NO. 22] |

**INTRODUCTION**

This matter is pending before the court on defendant United States' ("government") motion to strike plaintiff Wesley Gortmaker's errata sheet to his deposition.  See Docket No. 22.  This matter is assigned to this magistrate judge on the consent of the parties pursuant to 28 U.S.C. § 636(c)(1).  See Docket No. 21.

**FACTS**

Mr. Gortmaker filed suit against the government under the Federal Tort Claims Act alleging injuries stemming from a motor vehicle accident involving United States Forest Service employee, Special Agent Travis Lunders.  See Docket No. 1.  Mr. Gortmaker asserts Agent Lunders was driving "in a negligent and careless manner proximately causing" the car accident, which resulted in injuries and damages.  Id. at 2.  Further, Mr. Gortmaker asserts the government is liable for the negligent acts of Agent Lunders under the doctrine

of respondeat superior, "since at the time of the collision, [Agent] Lunders was in the course and scope of his employment with the United States Forest Service." Id.

The facts surrounding the accident are straight forward. Agent Lunders was traveling south on Elk Vale Road and Mr. Gortmaker was traveling east on Homestead Street in Rapid City, South Dakota. Both parties claim they had a green light when they collided at the Elk Vale/Homestead intersection.

During his deposition, Mr. Gortmaker testified that he first observed the traffic light at the Elk Vale/Homestead intersection when he was leaving Sturdevant's Auto Parts store. Docket No. 24-1, p. 2. At that point, Mr. Gortmaker stated the light was green and continued to be green "all the way down to where I went across Elk Vale Road." Id. Mr. Gortmaker testified that when he first observed the traffic signal, he was going "less than 10" miles per hour. Id. at 4. He testified that he was going this speed "because it's a short distance down there and it went downhill." Id. Mr. Gortmaker clarified his speed: "I really wasn't watching the speedometer, but usually what I run out of there when I come out of there is 10." Id. at 4-5. Mr. Gortmaker then stated that he slowed down when he approached the intersection to around two miles per hour, but that the light was still green. Id. at 5-6. Mr. Gortmaker testified that he stopped in the intersection to allow traffic traveling west on Homestead and north on Elk Vale to pass. Id. at 7.

Following the deposition, the government provided Mr. Gortmaker with its supplemental expert report. See Docket No. 24-2. Within this report, the

expert determined that (1) the distance between the exit of Sturdevant's auto parts store and the intersection was 472 feet, (2) the most time the Elk Vale/Homestead Street traffic light would have remained green was 25 seconds, and (3) the maximum distance Mr. Gortmaker could have travelled at 10 mph in 25 seconds was around 367 feet. Id.

After receiving this expert report, Mr. Gortmaker sent the government his errata sheet. See Docket No. 24-4. Mr. Gortmaker wanted to change page 9, lines 20, 22, 23, and 25 and page 10, lines 1, 2, 5, and 7, or the lines of testimony corresponding to Mr. Gortmaker's speed. Id. Mr. Gortmaker wished to change his testimony to "I was going slow but I'm not sure of the exact speed. I did not look at the speedometer." Docket No. 24-4. Mr. Gortmaker reasoned that "[a]fter driving on the road again at 10mph and 15 mph, I can not with certainty, say that I was going 10 mph or less. It would have been more accurate to say I was going between 10 mph and 20 mph from Sturdevant's exit to the Homestead/Elk Vale Rd. Intersection." Id.

The government now requests that the court strike Mr. Gortmaker's errata sheet, arguing the "changes are material alterations that directly contradict his deposition testimony and amount to an impermissible rewrite to evade an answer given under oath." Docket No. 23, p. 3. This matter is now fully briefed and ripe for decision.

## DISCUSSION

Federal Rule of Civil Procedure 30(e) allows a deponent "to review the transcript or recording; and if there are changes in form or substance, to sign a

statement listing the changes and the reasons for making them." See FED. R. CIV. P. 30(e).  Under Rule 30(e), the deponent has "30 days after being notified by the officer that the transcript or recording is available" to do this review.  Id.

"Despite this language, courts are split on the latitude to be afforded a deponent under Rule 30(e) to change his or her testimony with no controlling authority in the Eighth Circuit."  Jayne v. City of Sioux Falls, 4:18-CV-04088-KES, 2020 WL 3489968, at *2 (D.S.D. June 26, 2020) (citing 8A Charles Alan Wright & Arthur R. Miller, Fed. Prac. § Proc. Civ. § 2118 (3d ed. 2010); In re Genetically Modified Rice Litig., 2010 WL 3938376, at *1 (E.D. Mo. Oct. 5, 2010); Harden v. Wicomico Cty., 263 F.R.D. 304, 307-08 (D. Md. 2009)).

While courts across the country may split on this issue, the District of South Dakota has consistently favored a more limited approach.  In Wigg v. Sioux Falls Sch. Dist. 49-5, after discussion on how the Tenth, Seventh, and Second Circuits addressed substantive changes under Rule 30(e), this court found that "the better approach is found in the opinions from the Tenth and Seventh Circuits."  Wigg v. Sioux Falls Sch. Dist. 49-5, 274 F. Supp. 2d 1084, 1091 (D.S.D. 2003), rev'd in part on other grounds by 382 F.3d 807 (8th Cir. 2004).  With this approach, the court considers:

> whether the [deponent] was cross-examined during his earlier testimony, whether the [deponent] had access to the pertinent evidence at the time of his earlier testimony or whether the [Rule 30(e) correction] was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the [Rule 30(e) correction] attempts to explain.

Id. at 1090 (citing Burns v. Board of Cnty. Comm'rs of Jackson Cnty., 330 F.3d 1275 (10th Cir. 2003) (internal citations omitted)).

In Wigg, the court held that "a deposition is not a take home examination," and that "[i]f a party were allowed to create material factual disputes by altering one's deposition testimony via an errata sheet, summary judgment would rarely, if ever, be granted." Id. at 1091 (quoting Greenway v. Int'l Paper Co., 144 F.R.D. 322, 325 (W.D. La. 1992)). The court further noted that "[p]arties should not be able to evade an answer given under oath during a deposition when it is later used against them by simply stating the opposite in the errata sheet." Id.

Recently, in Jayne, this court determined that "[s]taying in line with Wigg's narrow interpretation . . . substantive changes in an errata sheet are permissible under Rule 30(e) only to the extent that the proposed changes are consistent with deposition testimony." Jayne, 2020 WL 3489968, at *4. Further, the court noted that "Rule 30(e) changes cannot be used for contradictory changes unless the change corrects a transcription error." If not for a transcription error, "the court will apply the Wigg three-factor sham affidavit test." Id. (citing Wigg, 274 F. Supp. 2d at 1090-92; Herndon v. U.S. Bancorp Asset Mgmt., Inc., 4:05-CV-01446-ERW, 2007 WL 988026, at *2 (E.D. Mo. May 11, 2007)).

Mr. Gortmaker cites Cultivos Yadran S.A. v. Rodriguez, asserting this court should broadly interpret Rule 30(e) to allow for all substantive changes to a deposition. Docket No. 26, p. 5; Cultivos Yadran S.A. v. Rodriguez, 258 F.R.D. 530 (S.D. Fla. 2009). But this court in Wigg and Jayne rejected this

5

assertion and found that "the better approach is the more limited interpretation of Rule 30(e)." Jayne, 2020 WL 3489968, at *2.

Mr. Gortmaker seeks to clarify the speed at which he was driving "during the total 472 feet distance verses his speed at a given point in time." Docket No. 26, p. 6. While defense counsel may not have asked about his speed while driving all of Homestead Street, Mr. Gortmaker's errata sheet amounts to an improper "take home examination." Wigg, 274 F. Supp. 2d at 1091.

Rule 30(e) was not intended to be used by deponents, and their legal counsel, to conduct live tests to change or clarify their deposition testimony. In Mr. Gortmaker's errata sheet, he states that only after driving down the road again did he come to the conclusion he was going between 10-20 mph. Docket No. 24-4. This change would amount to a "take home examination," by the deponent and is, thus, improper. Wigg, 274 F. Supp. 2d at 1091; see also Greenway v. Int'l Paper Co., 144 F.R.D. 322, 325 (W.D. La. 1992) ("[t]he Rule cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses.").

Mr. Gortmaker also argues that his "errata changes do not directly contradict [his] original testimony," because he only provided his approximate speed when departing Sturdevant's and was not looking at the speedometer. Docket No. 26, p. 4. But during deposition, when asked about how fast he was traveling as he approached the Elk Vale/Homestead intersection, Mr. Gortmaker testified he was going around two miles per hour. Docket

6

No. 24-1, p. 11.  While Mr. Gortmaker may be unsure of his speed for the rest of Homestead Street, he did provide testimony about his speed as he approached the intersection.  Thus, Mr. Gortmaker's proposed change to "I'm not sure of the exact speed," reasoning that it would have been more accurate to say he was going 10-20 mph for the entire stretch from Sturdevant's to the intersection, is contradictory.

Because Mr. Gortmaker's proposed errata changes are contradictory to his deposition testimony, and not made to correct a transcription error, "[this] court will apply the Wigg three-factor sham affidavit test."  Jayne, 2020 WL 3489968, at *4 (Wigg, 274 F. Supp. 2d at 1090-92).  First, Mr. Gortmaker's counsel was present at this deposition and could have cross-examined Mr. Gortmaker on his speed or sought to clarify his responses.  Nor is there any record of Mr. Gortmaker's counsel objecting to the government's questions on his speed of travel.  Second, Mr. Gortmaker had access to all the pertinent evidence at the time he gave his deposition and attempting to provide new evidence under the guise of the "take home examination" he conducted is unpersuasive.

Third, at no point did Mr. Gortmaker express confusion with the questions posed to him by defense counsel at the deposition, nor does he seek to change his testimony based on confusion.  While Mr. Gortmaker's counsel asserts, post hoc, that because he is elderly, he is vulnerable to giving unrealistic approximations of speed, this vulnerability was never addressed during the deposition.  Docket No. 26, p. 5.  From this court's view,

7

Mr. Gortmaker understood the straightforward questions posed to him by defense counsel and provided answers based on his personal knowledge at that time.

Given these circumstances, this court finds Mr. Gortmaker's errata sheet to be both an improper "take home examination," and a substantive change "[in]consistent with [his] deposition testimony." Jayne, 2020 WL 3489968, at *4. The court notes that Mr. Gortmaker already included qualifications in his deposition testimony such as the statement that he was "probably" driving less than 10 miles per hour and that he "really wasn't watching the speedometer." See Docket No. 24-1 at p. 4 (Gortmaker depo. at p. 9). He will be able to testify to much the same at trial and it will be up to the finder of fact to determine whether his testimony is credible. Accordingly, it is hereby

**ORDERED** that defendant's motion to strike Mr. Gortmaker's errata sheet [Docket No. 22] is GRANTED.

DATED this 18th day of July, 2022.

BY THE COURT:

*/s/ Veronica L. Duffy*
VERONICA L. DUFFY
United States Magistrate Judge